IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

PABLO J. C.,[1]

    Plaintiff,

v.                                                                                              1:24-cv-00970-JMR

FRANK BISIGNANO,[2] Commissioner
of the Social Security Administration,

    Defendant.

# MEMORANDUM OPINION AND ORDER

THIS MATTER comes before the Court on plaintiff Pablo J. C.'s motion to reverse and remand (Doc. 18), which was fully briefed on May 29, 2025. *See* Docs. 23, 26, 27. The parties consented to my entering final judgment in this case. Docs. 9–11. Having meticulously reviewed the entire record and being fully advised in the premises, I find that the Administrative Law Judge ("ALJ") erred by failing to adequately explain how he considered the state agency psychological consultants' findings. I therefore GRANT Pablo J. C.'s motion and remand this case to the Commissioner for further proceedings consistent with this opinion.

---

[1] Due to sensitive personal and medical information contained in this opinion, the Court uses only the plaintiff's first name and middle and last initials. In so doing, the Court balances the plaintiff's privacy interest in his personal medical information, *United States v. Dillard*, 795 F.3d 1191, 1205–06 (10th Cir. 2015), and the public's interest in accessing the opinion, Fed. R. Civ. P. 5.2(c)(2)(B).

[2] Frank Bisignano became the Commissioner of the Social Security Administration on May 7, 2025, and is automatically substituted as the defendant in this action. Fed. R. Civ. P. 25(d).

I.     **Standard of Review**

The standard of review in a Social Security appeal is whether the Commissioner's final decision[3] is supported by substantial evidence and whether the correct legal standards were applied. *Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008). If substantial evidence supports the Commissioner's findings and the correct legal standards were applied, the Commissioner's decision stands, and the plaintiff is not entitled to relief. *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks and brackets omitted). The Court must meticulously review the entire record, but it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Flaherty v. Astrue*, 515 F.3d 1067, 1070 (10th Cir. 2007).

"Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley*, 373 F.3d at 1118. A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Id.* While the Court may not reweigh the evidence or try the issues de novo, its examination of the record as a whole must include "anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005). "The possibility of drawing two inconsistent conclusions from the evidence does not prevent [the] findings from

---

[3] The Court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g), which generally is the ALJ's decision, 20 C.F.R. §§ 404.981, 416.1481, as it is in this case.

being supported by substantial evidence." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quoting *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).

## II.   Applicable Law and Sequential Evaluation Process

To qualify for disability benefits, a claimant must establish that he or she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a).

When considering a disability application, the Commissioner is required to use a five-step sequential evaluation process. 20 C.F.R. §§ 404.1520, 416.920; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). At the first four steps of the evaluation process, the claimant must show: (1) the claimant is not engaged in "substantial gainful activity"; (2) the claimant has a "severe medically determinable . . . impairment . . . or a combination of impairments" that has lasted or is expected to last for at least one year; *and* (3) the impairment(s) either meet or equal one of the Listings[4] of presumptively disabling impairments; *or* (4) the claimant is unable to perform his or her "past relevant work." 20 C.F.R. §§ 404.1520(a)(4)(i–iv), 416.920(a)(4)(i–iv); *Grogan*, 399 F.3d at 1260–61. If the claimant cannot show that his or her impairment meets or equals a Listing but proves that he or she is unable to perform his or her "past relevant work," the burden of proof shifts to the Commissioner, at step five, to show that the claimant is able to perform other work in the national economy, considering the claimant's residual functional capacity ("RFC"), age, education, and work experience. *Id.*

---

[4] Listing of Impairments, 20 C.F.R. pt. 404, subpt. P, app. 1.

### III.    Background and Procedural History

Plaintiff was born in 1974, completed the eleventh grade, and worked as a retail stocker, a security guard, a home healthcare agency driver, and a casino housekeeper. AR 50, 198, 279.[5] Plaintiff filed applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on November 15, 2021—alleging disability since January 1, 2020, due to depression, anxiety, fifty percent deafness in both ears, and epilepsy. AR 198–209, 278. The Social Security Administration ("SSA") denied his claims initially on July 5, 2022. AR 114–23. The SSA then denied his claim on reconsideration on March 15, 2023. AR 127–34. Plaintiff requested a hearing before an ALJ. AR 135–37. On December 8, 2023, ALJ Michael Leppala held a telephonic hearing. AR 43–63. ALJ Leppala issued an unfavorable decision on April 9, 2024. AR 20–42.

At step one, the ALJ found that Plaintiff had engaged in some quarters of substantial, gainful activity since January 1, 2020, his alleged onset date, but not enough quarters to deny disability benefits at step one. AR 25. At step two, the ALJ found that Plaintiff suffered from the following severe impairments: epilepsy, hearing loss, depression, intellectual disorder, and post-traumatic stress disorder ("PTSD"). AR 26. At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled a Listing. AR 26–29. Because the ALJ found that none of the impairments met a Listing, the ALJ assessed Plaintiff's RFC. AR 29–34. The ALJ found Plaintiff had the RFC to

> perform a full range of work at all exertional levels but with the following non-exertional limitations: he is limited to jobs that do not require fine hearing capability. He is further limited to frequent exposure to extreme hot, wetness, humidity, and unprotected heights, dangerous machinery, and work environments

---

[5] Document 12 is the sealed Administrative Record ("AR"). When citing to the record, the Court cites to the AR's internal pagination in the lower right-hand corner of each page, rather than to the CM/ECF document number and page.

4

with no more than moderate noise. The Claimant can understand, carry out, and remember simple instructions and make commensurate work-related decisions; respond appropriately to supervision, coworkers, and work situations; deal with occasional changes in work setting; maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 29.

At step four, the ALJ concluded that Plaintiff did not have any past relevant work. AR 34. The ALJ found Plaintiff not disabled at step five because he could perform jobs that exist in significant numbers in the national economy—such as station cleaner, laundry aide, and stores laborer. AR 34–35.

On April 25, 2024, Plaintiff requested review of the ALJ's unfavorable decision by the Appeals Council. AR 17–18. On July 31, 2024, the Appeals Council denied the request for review. AR 1–6. Plaintiff timely filed his appeal to this Court on September 30, 2024.[6] Doc. 1.

## IV. Plaintiff's Claims

Plaintiff raises three arguments for reversing and remanding this case: (1) the ALJ erred by failing to adequately explain how he considered the state agency psychological consultants' findings; (2) the ALJ failed to give legally sufficient reasons for finding psychological consultative examiner Dr. Edward Tilson's opinion unpersuasive; and (3) the ALJ failed to adequately develop the record because he did not obtain treatment records from Plaintiff's therapist. *See* Doc. 18 at 9–21. For the reasons discussed below, I find that the ALJ committed legal error by failing to adequately explain how he considered the state agency psychological consultants' findings, and I remand on this basis. I do not address the other alleged errors, which

---

[6] A claimant has 60 days to file an appeal. The 60 days begin running five days after the decision is mailed. 20 C.F.R. § 404.981; *see also* AR 2.

"may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

## V.     Prior Administrative Decisions of the Psychological Consultants

State agency psychological consultant Dr. Richard Sorenson completed a Mental Residual Functional Capacity Assessment ("MRFCA") for Plaintiff during the initial level of the disability determination process. AR 85–87. In what is commonly referred to as Section I of the MRFCA,[7] Dr. Sorenson found that Plaintiff had several moderate mental limitations:

Understanding and Memory Limitations:

- A moderate limitation in the ability to remember locations and work-like procedures.
- A moderate limitation in the ability to understand and remember detailed instructions.

Sustained Concentration and Persistence Limitations:

- A moderate limitation in the ability to carry out detailed instructions.
- A moderate limitation in the ability to maintain attention and concentration for extended periods.
- A moderate limitation in the ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances.
- A moderate limitation in the ability to work in coordination with or in proximity to others without being distracted by them.
- A moderate limitation in the ability to complete a normal workday and workweek without interruptions from psychologically-based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods.

---

[7] Mental Residual Functional Capacity Assessment ("MRFCA") forms are completed by psychological consultants through the SSA's Electronic Claims Analysis Tool (eCAT). Prior to eCAT, consultants completed special form SSA-4734-F4-SUP. That form was formally divided into Section I ("Summary Conclusions" containing checkboxes) and Section III ("Functional Capacity Assessment"). Although SSA-4734-F4-SUPs (MRFCAs) completed through eCAT no longer have these section labels, parties and courts have continued to refer to the checkbox portion of each MRFCA as "Section I," and the "narrative" portion(s) as "Section III." In addition, the instructions contained in POMS DI 24510.060–65 on how to complete SSA-4734-F4-SUP still apply to the eCAT version of the form.

Social Interaction Limitations:

- A moderate limitation in the ability to interact appropriately with the general public.
- A moderate limitation in the ability to accept instructions and respond appropriately to criticism from supervisors.
- A moderate limitation in the ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.
- A moderate limitation in the ability to maintain socially appropriate behavior and to adhere to basic standards of neatness and cleanliness.

Adaptation Limitations:

- A moderate limitation in the ability to respond appropriately to changes in the work setting.

AR 85–86. In the sections following each category of limitations—although instructed to explain the limitations noted in each section in "narrative form"— Dr. Sorenson gave the same explanation, writing only "Dx ["diagnosis"] major depressive disorder with anxious distress, intellectual disorder, [and] PTSD." *Id.* In the "additional explanation" section of the MRFC, commonly referred to as Section III, Dr. Sorenson stated the following:

> Claimant can understand, remember and carry out only simple instructions, make simple decisions, attend and concentrate for extended periods, interact adequately with co-workers and supervisors and respond appropriately to changes in the routine work setting.

AR 86. On reconsideration, Dr. Tanya Brode entered an identical MRFCA. AR 108–10.

The ALJ assessed Drs. Sorenson's and Brode's findings as follows:

Richard Sorensen, PhD, has said that the Claimant has moderate limitations in all four mental domains (74A). On reconsideration, Tawyna Brode, PsyD, makes similar findings (8A). These psychologists consider records showing that the Claimant has refused referrals to neurology; he has also refused to see his primary care provider since the doctor would not give him a medical cannabis card. The Claimant's statements suggest that he developed anxiety and depression after his disability benefits were taken away. At times, he appears anxious and depressed, while other times he is alert, oriented, with clear speech and logical thought process, and without hallucinations. In June 2022, Edward Tilson, PhD, found difficulties

7

> with the Claimant's memory, insight, judgment, and starting and completing tasks. The questionnaires were consistent with severe depression and severe anxiety.
>
> This is persuasive, consistent with the overall record, and consistent with the Claimant's statements. At times, he has slurred speech (5F/28). Some treatment notes show confusion, poor understanding of complex ideas, distractibility, and significant problems with short and long-term memory in the context of seizures (1F/47, 52; 6F/18). Some notes say that medical cannabis helps with his PTSD and chronic pain (16F/6), or that medical cannabis helps with his anxiety (16F/64), or that the Claimant's epilepsy is stable off medications (12F/18), or that epilepsy improves with medical cannabis (12F/25). At times, he has appeared depressed and anxious (8F/24; 11F/51; 12F/32), while other times he is pleasant and cooperative (6F/50; 8F/21; 11F/73, 113; 12F/35; 16F/10, 87). The note dated October 3, 2022 says that the Claimant's epilepsy was stable off medications; he was waiting for a neurology appointment; he was not sure if he had seizures or pseudo-seizures (11F/22). The note dated February 28, 2023 says that the Claimant still has seizures but declines medications. He was not seeing a neurologist. He was hearing voices while trying to fall asleep, and cannabis helped with that to some degree (12F/12). However, on December 7, 2023, he declined treatment for epilepsy or a referral to neurology (16F/6).

AR 31–32.

> The ALJ's ultimately found Plaintiff had the mental RFC to
>
> understand, carry out, and remember simple instructions and make commensurate work-related decisions; respond appropriately to supervision, coworkers, and work situations; deal with occasional changes in work setting; maintain concentration, persistence, and pace for up to and including two hours at a time with normal breaks throughout a normal workday. He is limited to occasional interaction with coworkers, supervisors, and the general public.

AR 29.

## VI. The ALJ erred by failing to adequately explain how he considered the state agency psychological consultants' findings.

The ALJ did not adequately articulate his consideration of Drs. Sorenson's and Brode's findings; therefore, remand is required. The Court agrees with Plaintiff's broad argument that the ALJ erred by failing to adequately explain how he considered the state agency psychological consultants' findings. However, the ALJ's decision is simply too vague to enable the Court to

8

review the additional detailed arguments that Plaintiff makes about Section I and Section III of the MRFCAs.[8]

The ALJ's decision is fatally flawed in three ways: (1) The ALJ failed to explain which of Drs. Sorenson's and Brode's findings, if any, he adopted; (2) The ALJ failed to properly analyze the persuasiveness of Drs. Sorenson's and Brode's findings; and (3) The ALJ failed to adequately tie the mental limitations he included in Plaintiff's RFC to the evidence of record. Because the ALJ's reasons for the decision are not articulated with sufficient particularity to allow for judicial review, the court cannot affirm the decision as legally correct. *Clifton v. Chater,* 79 F.3d 1007, 1009 (10th Cir. 1996) ("bare conclusion[s are] beyond meaningful judicial review"); *see also Jensen*, 436 F.3d at 1165 ("The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed is grounds for reversal.").

### A. The ALJ erred by failing to explain which of Drs. Sorenson's and Brode's findings, if any, he adopted.

The ALJ's decision is legally insufficient because it does not explain which of Drs. Sorenson's and Brode's findings, if any, he adopted. The ALJ's decision does not explicitly mention the Section I or Section III findings of Drs. Sorenson or Brode and states only that Drs. Sorensen and Brode concluded that Plaintiff "has moderate limitations in all four mental domains." AR 31. It is unclear if the ALJ is referring to the Paragraph B criteria of the Listings

---

[8] Plaintiff argues that the ALJ failed to evaluate the moderate mental limitations contained in Section I of Drs. Sorenson's and Brode's MRFCA forms. Doc. 18 at 9–14. Plaintiff asserts that these moderate Section I limitations were not incorporated in and are contradictory to the doctors' Section III MRFCA findings. *Id.* at 9. Because of this, Plaintiff asserts that the ALJ erred by relying on the doctors' Section III findings in formulating his RFC. *Id.* at 12. The Commissioner offers several arguments countering these arguments about Section I and Section III. Doc. 23 at 7–12.

9

that he used to assess Plaintiff's limitations at step 3 (*See* AR 26–28, 79, 105) or to the numerous moderate mental limitations noted in Section I of the doctors' MRFCAs (*See* AR 85–86, 108–09). The ALJ does not list the mental limitations to which he refers, nor does he offer any pinpoint citations to the record or analysis that would enable the Court to deduce this information.

      Regardless of how the Court interprets the ambiguity, the ALJ's discussion is insufficient. First, if the ALJ is referencing the Paragraph B criteria,[9] his discussion is legally insufficient. An analysis of Paragraph B limitations at step three is not a substitute for an analysis of mental RFC limitations. In assessing a claimant's RFC, "[t]he adjudicator must remember that the limitations identified in the 'paragraph B' . . . criteria [for severity] are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process." SSR 96–8p, 1996 WL 374184, at *4. "The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing of Impairments, and summarized on the [Psychiatric Review Technique Form]." *Id.* Second, if the ALJ is referencing the moderate mental limitations in Section I of the doctors' MRFCA forms, the ALJ's discussion is insufficient because it neither lists the moderate limitations nor shows how or if any of the limitations were incorporated in the RFC. Third, the ALJ does not discuss or

---

[9] Paragraph B "criteria represent the [broad] areas of mental functioning a person uses in a work setting. They are: understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself." POMS DI 34001.032(A)(2)(b). The ALJ assesses these criteria to assess how a claimant's mental disorder(s) limit(s) functioning. *Id.*

adopt the Section III MRFCA findings of either doctor in his decision.[10]

The Court is left to guess as to what parts of the doctors' findings the ALJ considered and what part of the doctors' findings the ALJ adopted as part of the RFC. This is legally insufficient. *See Jensen*, 436 F.3d at 1165 (the ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed."). The Court remands so the ALJ can remedy this error.

### B. The ALJ failed to properly analyze the persuasiveness of Drs. Sorenson's and Brode's findings.

In its attempt to ascertain what parts of Drs. Sorenson's and Brode's findings the ALJ considered and adopted, the Court examined the ALJ's analysis of the persuasiveness of their findings. However, this examination sheds no light on how the ALJ considered the doctors' findings. Indeed, this examination shows that the ALJ committed legal error by failing to adequately explain how he considered the findings of Drs. Sorenson and Brode.

The rules pertaining to prior administrative findings[11] require the SSA to evaluate and articulate the persuasiveness of the prior administrative findings in the case record. 20 C.F.R. §§ 404.1520c(a)-(b), 416.920c(a)-(b). In evaluating the persuasiveness of prior administrative findings, the SSA considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, (4) specialization, and (5) other factors that support or contradict a prior

---

[10] Plaintiff guesses that "the ALJ did adopt portions of the narrative opinions of the state agency reviewing psychologists within the residual functional capacity." Doc. 18 at 11. The Commissioner, on the other hand, guesses that the ALJ adopted the doctors' Section III findings and then tempered them further in formulating Plaintiff's RFC. Doc. 23 at 10. The Court, like the parties, is left to guess how the ALJ arrived at Plaintiff's mental RFC, rendering the ALJ's RFC analysis insufficient.

[11] Statements about a claimant's medical issues made by state agency psychological consultants are classified as "prior administrative medical findings" rather than opinions. *See* 20 C.F.R. §§ 404.1513(a)(5), 416.913(a)(5).

administrative finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c). An ALJ is always required to explain how he or she considered the first two factors: "[W]e will explain how we considered the supportability and consistency factors for a medical source's . . . prior administrative finding in your determination or decision." 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). The ALJ is only required to explain how he or she considered the other three factors if differing medical opinions or prior administrative findings are equally well-supported and consistent with the record. 20 C.F.R. §§ 404.1520c(b)(3), 416.920c(b)(3).

"Supportability" examines how closely connected a prior administrative medical finding is to the evidence and the medical source's explanations: "The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her . . . prior administrative medical finding(s), the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(1), § 416.920c(c)(1). "Consistency," on the other hand, compares a prior administrative finding to the evidence: "The more consistent a . . . prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the . . . prior administrative medical finding(s) will be." 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

While the regulations allow the ALJ some discretion in *how* he articulates his findings on the persuasive value of prior administrative findings, it provides no leeway as to *whether* he articulates such findings. *See* 20 C.F.R. §§ 404.1520c(b), 416.920c(b) (providing that the ALJ "will articulate" how persuasive he finds "all of the . . . prior administrative medical findings" in the case record). In addition, "all [of] the ALJ's required findings must be supported by substantial evidence, and he must consider all relevant medical evidence in making those findings." *Grogan*, 399 F.3d at 1262 (citations and quotation marks omitted). An ALJ's

persuasiveness finding "is not based on substantial evidence if it is overwhelmed by other evidence in the record[,]" *Langley*, 373 F.3d at 1118 (quotation omitted), or if it "constitutes mere conclusion[,]" *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992) (citation omitted).  The ALJ's decision must provide the Court "with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen*, 436 F.3d at 1165 (quotation omitted).

Here, the ALJ did not discuss the supportability of Drs. Sorenson's and Brode's findings at all.  *See* AR 31–32.  And the ALJ's discussion of consistency merely cites mixed medical findings without any analysis.  *See* AR 32.  The ALJ does not compare the doctors' findings to the medical evidence to show that they are in fact consistent.  Thus, the Court is not only left in the dark about what findings the ALJ found persuasive, but also left in the dark about why he found them persuasive.  This is legally insufficient.  *See Jensen*, 436 F.3d at 1165.  On remand, the ALJ must adequately analyze the persuasiveness of Drs. Sorenson's and Brodes's findings.  This analysis must include an analysis of both the supportability and consistency of the doctors' findings.  The Court remands so the ALJ can remedy this error.

C. **The ALJ failed to adequately tie the mental limitations he included in Plaintiff's RFC to the evidence of record.**

The ALJ's failure to articulate his consideration of Drs. Sorenson's and Brode's findings is a symptom of the larger problem with the ALJ's decision:  the ALJ failed to adequately articulate how he arrived at Plaintiff's mental RFC.  "The RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis, including the functions in paragraphs (b), (c), and (d) of 20 C.F.R. [§§] 404.1545 and 416.945."  SSR 96-8p, 1996 WL 374184, at *1.  This means the ALJ must consider how the claimant's impairments affect his physical abilities, mental abilities, and other

abilities.  20 C.F.R. §§ 404.1545(b)-(d), 416.945(b)–(d).  An ALJ must consider all of the following when assessing a claimant's mental abilities:

> When we assess your mental abilities, we first assess the nature and extent of your mental limitations and restrictions and then determine your residual functional capacity for work activity on a regular and continuing basis.  A limited ability to carry out certain mental activities, such as limitations in understanding, remembering, and carrying out instructions, and in responding appropriately to supervision, co-workers, and work pressures in a work setting, may reduce your ability to do past work and other work.

20 C.F.R. §§ 404.1545(c), 416.945(c); *see also* SSR 96-8p, 1996 WL 374184, at *6 ("Work-related mental activities generally required by competitive, remunerative work include the abilities to:  understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.").

    In formulating the RFC, an ALJ must perform a function-by-function assessment of these work-related functions, considering all of the relevant evidence in the case record.  SSR 96-8p, 1996 WL 374184, at *2.  The Tenth Circuit has held that where a claimant is found to have more than mild mental limitations in work-related functions, the ALJ must "express those impairments 'in terms of work-related functions' or '[w]ork-related mental activities.'"  *Jaramillo v. Colvin*, 576 F. App'x 870, 876 (10th Cir. 2004) (unpublished) (quoting SSR 96-8p, 1996 WL 374184, at *6).

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).  In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record.  The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p, 1996 WL 374184, at *7.

In this case, the ALJ adequately broke Plaintiff's mental RFC into functional components and work-related mental activities. *See* AR 29. But the ALJ then failed to "include a narrative discussion describing how the evidence supports each conclusion." SSR 96-8p, 1996 WL 374184, at *7. For example, the ALJ found that Plaintiff's mental RFC allowed him to "have *occasional* interaction with coworkers, supervisors, and the general public." AR 29 (emphasis added). But the ALJ provided no discussion of his reasons or the evidentiary basis for including this limitation in Plaintiff's RFC. Likewise, the ALJ found that Plaintiff was "able to deal with *occasional* changes in work setting." *Id*. (emphasis added). But again, the ALJ provided no discussion of his reasons or the evidentiary basis for including this limitation in Plaintiff's RFC. It is possible that these limitations are at least partially based on limitations in Drs. Sorenson's and Brode's findings. But that is neither clear nor certain from the ALJ's decision.[12] The Commissioner argues that the ALJ adopted Drs. Sorenson's and Brode's Section III findings and then "tempered [their] extremes for the claimant's benefit." Doc. 23 at 10. But this is nothing more than a guess—the ALJ's decision is simply silent on how the ALJ arrived at these limitations. In any case, "this court may not create or adopt post-hoc rationalizations to support the ALJ's decision that are not apparent from the ALJ's decision itself." *Haga v. Astrue*, 482 F.3d 1205, 1207–08 (10th Cir. 2007).

The ALJ failed to adequately tie the mental limitations he included in Plaintiff's RFC to the evidence of record. The Court remands so the ALJ can remedy this error.

---

[12] Neither of these limitations corresponds directly with the limitations in Drs. Sorenson's and Brode's Section I or Section III findings. *See* AR 85–86, 108–09.

## VII.  Conclusion

The ALJ did not adequately articulate his consideration of Drs. Sorenson's and Brode's findings.  The ALJ failed to explain which of Drs. Sorenson's and Brode's findings, if any, he adopted.  The ALJ failed to properly analyze the persuasiveness of Drs. Sorenson's and Brode's findings.  Finally, the ALJ failed to adequately tie the mental limitations he included in Plaintiff's RFC to the evidence of record.  The Court remands so the ALJ can remedy these errors.  The Court does not reach Plaintiff's other arguments, which "may be affected by the ALJ's treatment of this case on remand." *Watkins*, 350 F.3d at 1299.

IT IS THEREFORE ORDERED that Plaintiff's motion to reverse and remand (Doc. 18) is GRANTED.

IT IS FURTHER ORDERED that the Commissioner's final decision is REVERSED, and this case is REMANDED for further proceedings in accordance with this opinion.

_____
JENNIFER M. ROZZONI
United States Magistrate Judge
Presiding by Consent